## COUNTY COMMISSIONERS AND TOWNSHIP SCHOOLS.

[Common Pleas Court of Champaign County.]

THE BOARD OF EDUCATION OF WAYNE TOWNSHIP, CHAMPAIGN
COUNTY, OHIO, v. J. MONROE SHAUL AND MABEL
KAUFFMAN.

Decided, October 8, 1906.

*Schools—Authority of Township Boards of Education—When the
County Commissioners may Intervene—Judicial and Ministerial
Duties of Township Boards—Centralized Schools—Pleading—In-
junction—Sections 3921, 3922, 3969 and 4007.*

1. A petition by a township board of education states a cause of action
   when it alleges that the defendants have unlawfully taken posses-
   sion of the school houses in certain sub-districts, and have unlaw-
   fully assumed authority to teach school therein, and have inter-
   fered with the plaintiff in its control of the schools in said sub-
   districts.

2. Where a township board of education voluntarily or willfully fails
   to perform any of its ministerial duties, the county commissioners
   may step in and perform such duties as authoritatively and in the
   same manner as though it was a board of education which was
   acting.

3. But with reference to the judicial duties of a township board, such
   as the suspending at its discretion of the schools in certain sub-
   districts, or the abolishing of the sub-districts and the providing
   in either instance for the conveyance of the pupils to other public
   schools or to one or more centralized schools, the county commis-
   sioners are without authority to interfere or to reverse orders
   made by the township board in that behalf; and the fact that the
   action of the township board was contrary to the will of the people
   and against their protest does not change the rights of the board
   in that regard.

4. Where county commissioners have wrongfully interfered in such a
   matter, and the illegality of their action does not appear on the
   face of the record of their proceedings, but is shown by evidence
   contrary to what appears on the record, injunction is the proper
   remedy for the township board.

MIDDLETON, J.

These two cases are substantially the same, and are submitted
to the court upon the petitions of the plaintiff, and a motion on

behalf of the defendant to dissolve a temporary restraining order heretofore granted by the court, restraining the defendants from teaching the sub-district school in sub-districts, numbers 2 and 12, respectively, of said township. With the exception of the name of the defendant and numbers of the sub-district, the petitions are the same.

In the case against J. Monroe Shaul, the petition avers that on or about the 18th day of September, 1906, the defendant without any authority, legal or otherwise, and without the knowledge or consent, and against the will of the plaintiff, unlawfully and forcibly entered and took possession and assumed the control of the school house in sub-district No. 12, in said township of Wayne, and has unlawfully assumed authority to teach school in said sub-district; and has without any authority whatever, interfered with the plaintiff in its control and supervision of said sub-district and of the pupils therein; and has ever since the date aforesaid, unlawfully and forcibly prevented, and does still unlawfully and forcibly prevent the plaintiff from having the possession, use and control of said school house, and has ever since said date, unlawfully and without warrant of law and without any authority whatever, interfered with the plaintiff in the supervision, management and control of the school provided for the said sub-district by this plaintiff, and for which said sub-district this plaintiff is legally required to have and maintain a school, as the law directs. And the defendant has ever since said date unlawfully interfered with the plaintiff in the management and supervision of the pupils residing in said sub-district, for whom this plaintiff is legally required to have and maintain a school; and threatens to and will continue the aforesaid unlawful prevention of the use and control by the plaintiff of said school house, and the having, holding, and maintaining of the school by said plaintiff for said sub-district throughout the entire school year; and threatens to and will continue the aforesaid unlawful interference with the plaintiff in the supervision, management and control of the school provided for said sub-district by this plaintiff; and threatens to and will continue the aforesaid unlawful interference with the

plaintiff in the management and supervision of the pupils residing in said sub-district unless restrained therefrom as hereinafter prayed for. By reason whereof, a great and irreparable injury has been done, is being done, and will continue to be done the plaintiff and the patrons of said school provided for said sub-district.

The defendant interposes the following motion:

Now comes the defendant and moves the court to dissolve and vacate the temporary order of injunction allowed, and made herein for the following reasons, to-wit:

First. The petition does not state facts sufficient to constitute a cause of action in favor of plaintiff and against the defendant.

Second. The board of education of Wayne township did not authorize the bringing of this action.

Third. Because the allegations made in the petition are not true.

The third ground of the motion to dissolve is submitted to the court upon testimony; the evidence of the defendant in support of this ground of the motion being the record of the proceedings of the board of county commissioners of Champaign county of September 17, 1906, showing the employment of the defendants by the board to teach the schools in said sub-districts Nos. 2 and 12; and the evidence offered in support of the petition by the plaintiff being the record of the proceedings of the board of education of Wayne township, Champaign county, Ohio, of August 10, 1906, showing a suspension of these two sub-districts, Nos. 2 and 12, for one year by said board, the changing of the boundary lines of said district No. 2 by said board; and the record of the proceedings of the board of education of August 31, 1906, showing an acceptance of a contract and bond of C. W. Autram, as driver in district No. 12, and the appointment of a committee of two for conveyance in district No. 2; the record of the proceedings of the board of education of Wayne township, of September 14, 1906, showing the approval of a contract and bond of W. S. Chatfield for conveying pupils in district No. 2 to Cable and other sub-districts; and the appointment of a com-

mittee of one to arrange for the conveyance of pupils in district No. 2, not already arranged for; and the adoption of a motion by the board to retain E. L. Bodey and C. E. Buroker, attorneys, to represent the board in the legal matters then pending, or which might thereafter be brought in the matters of re-districting, centralization and suspending the schools of the township.

The record of the proceedings of the county commissioners of September 17, 1906, offered by the defendants in support of the third ground of their motion to dissolve the temporary restraining order, is as follows:

"COMMISSIONERS JOURNAL No. 16, page 558. *In Matter of the Wayne Township Schools.*

"In pursuance of an adjournment from September 4th, 1906, the above matter came up. The county commissioners being fully advised by evidence in the hearing before said board, are satisfied and do find that the board of education of Wayne township has failed to provide sufficient school privileges for all the youth of school age in sub-districts Nos. 2 and 12 of said township, and that said board has failed to provide for each school an equitable share of school advantages as required by law, and have failed to hire school teachers for said sub-districts Nos. 2 and 12. To the foregoing decision and finding, the said board of education of Wayne township excepts.

"Mr. D. R. Kimball moved to employ J. M. Shaul as teacher for said sub-district No. 12 at a salary of $43 per month as teacher, and $2 per month for janitor services, for the period of eight months or so long as he continues as teacher of said school. Motion carried on roll call by the following vote: Couchman, aye; Kimball, aye; Hodge, aye.

"Mr. Kimball moved to employ Mabel Kauffman teacher of sub-district No. 2, Wayne township, at a salary of $43 and $2 janitor fees per month, for a period of eight months, or as long as she shall continue as teacher of said school. Motion carried by the following vote: Mr. Couchman, aye; Kimball, aye; Hodge, aye."

The record of the proceedings of the board of education of Wayne township of August 10th, 1906, relating to the suspension of the schools in districts Nos. 2 and 12, is as follows;

"Motion by Breedlove, seconded by Johnson, that board suspend districts Nos. 2 and 12 for one year, and convey to Cable. McClellan, yes; Johnson, yes; Breedlove, yes; Madden, no; Hardman, not present. Motion carried."

The record of the board of education of this date, referring to the changing of the boundary line of district No. 2 is as follows:

"Motion by Breedlove, seconded by Johnson, that we change the boundary line of district No. 2 as follows: * * * Motion carried."

The record of the proceedings of the board of education of August 31, 1906, relating to the acceptance of a contract of C. W. Outram for driver in district No. 12, is as follows:

"Moved by Johnson, seconded by Breedlove, that board accept contract as read, and hire C. W. Outram driver as per contract. McClellan, yes; Breedlove, yes; Madden, no; Hardman not present. Motion carried."

That relating to the acceptance of his bond is as follows:

"Motion by Johnson, seconded by Breedlove, that board accept C. W. Outram's bond as read. McClellan, yes; Johnson; yes; Breedlove, yes; Madden, no. Motion carried."

That relating to the committee of two to arrange for the conveyance of district No. 2 is as follows:

"Motion by Johnson, seconded by Breedlove, that committee of two be appointed to arrange for the conveyance of district No. 2. McClellan, yes; Johnson, yes; Breedlove, yes; Madden, no. Motion carried. Johnson and Breedlove appointed as a committee."

The record of the proceedings of the board of education of September 14, 1906, relating to the contract and bond of W. S. Chatfield for conveying pupils in district No. 2 to Cable is as follows:

"Motion by Breedlove, seconded by Johnson, that board approve and accept contract and bond of W. S. Chatfield for con-

veying pupils in district No. 2 to Cable.    McClellan, yes; Johnson, yes; Breedlove, yes; Madden, no.    Motion carried.''

And that relating to the committee to make arrangements for conveyance of pupils in district No. 2, not already arranged for, is as follows:

"Motion by Johnson, seconded by Breedlove, that committee of one be appointed to make arrangements for the conveyance of pupils in district No. 2, not already arranged for.  McClellan, yes; Johnson, yes; Breedlove, yes; Madden, no; Hardman not present.  Motion carried.''

It appears from these records that on August 10, the board suspended the schools in sub-districts Nos. 2 and 12, and that on August 31, the board accepted a contract and bond of C. W. Outram for driver in district No. 2, and on September 14, that the board accepted a bond and contract of W. S. Chatfield for conveying pupils in district No. 2; and also that the board attempted, at least, to change the boundary lines of district No. 2 at its meeting of August 10; and while it is not so stated specifically in the minutes of the proceedings of the board, I think it is apparent upon the face of the record that the contract of September 14, with W. S. Chatfield for conveying pupils in district No. 2, covered the territory of said sub-district, as it stood or remained after the changing of the boundary lines of said sub-district by the board of August 10, 1906; and that by further action of the board September 14, 1906, it was intended to provide for conveyance of the pupils residing within the original boundary line of district No. 2, and not included in the territory of the district as it stood after the change in the boundary line.

While referring to this subject of the change in the boundary line of sub-district No. 2, or at least the attempt to change such line, by the board of education, I may say that while the record of the proceedings of the board of education does not affirmatively show that the committee, appointed by the board to arrange for the conveyance of the pupils formerly included in sub-district No. 2, actually made such arrangement before the date

of the employment of the teachers by the board of county com-misioners, there is no evidence before the court to show that said committee had not made such arrangement, and in the absence of such proof, the court is of the opinion, if any presump-tion arises in the matter at all, the presumption is that the com-mittee had discharged its duty in this respect and made arrangement for the transportation of such pupils to another sub-district school. Besides, as will more clearly appear from the opinion of the court hereinafter expressed, the failure on the part of the board of education to arrange for the transpor-tation of these pupils would not of itself warrant the com-missioners in reversing the order of the township board of education, and re-instating district Nos. 2 and 12, and employing teachers for the schools thereof; nor, in this view of the matter, can it make any difference whether the meeting of the board, at which this change was attempted, was or was not a regular meeting of such board.

With respect to this third branch of the motion to dissolve the injunction, the first questions that arise are: Had the commis-sioners on the 17th day of September, 1906, authority to employ a teacher for sub-districts Nos. 2 and 12? Was their employment by the said commissioners lawful? Have said teachers the law-ful right to occupy the school house in said sub-districts and teach the school therein? Or, is their occupancy of such school houses and their attempt to teach the schools in said sub-districts unlawful and without authority? Does the act of the defendants in this respect, interfere with the plaintiff, the board of educa-tion of said township, in its lawful control and supervision of said sub-districts and of the pupils therein, and of the school provided for said sub-districts, and with the management by the plaintiff, the board of education, in the management and super-vision of the pupils residing in said sub-districts?

The determination of these questions involves the correct construction of several sections of the statutes of Ohio, defining the authority and prescribing the duties of a township board of education and the county commissioners, with respect to the maintenance of the public schools in a township school district.

These sections are parts of Title 3 of the Revised Statutes of Ohio. The sections more directly involved, are Sections 3921, 3922, 3969 and 4007.

Section 3921 provides as follows:

"The division of township school districts into sub-districts as they exist at the time of the passage of this act, shall continue and be recognized for the purpose of school attendance, but the board of education is authorized to increase or diminish the number or change the boundaries of the sub-districts at any regular meeting, a map designating such changes to be entered upon its records."

Section 3922, or that part that bears upon the case at bar, provides as follows:

"The board of education is authorized to suspend the schools in any or all sub-districts in the township district, but upon such suspension the board must provide for the conveyance of the pupils residing in such sub-district or sub-districts to a public school in said township district, or to a public school in another district, the cost of such conveyance to be paid out of the funds of the township school district; or the board may abolish all the sub-districts providing conveyance is furnished to one or more public central schools, the expense of such conveyance to be paid out of the funds of the district."

And that part of Section 4007 bearing upon the case at bar, is as follows:

"Each township board of education shall establish and maintain at least one elementary school in each sub-district under its control, unless transportation is furnished to the pupils thereof, as provided by law."

These several sections of the statute clearly authorize the board of education to suspend the schools in its discretion in any and all of the sub-districts in the township district, and to provide for conveyance of the pupils in such district or sub-districts to other public schools; or to abolish all the sub-districts and provide conveyance to one or more central schools.

Section 3969, and the one under which the defendants in these cases claim the right to perform the services provided for by the action of the board of county commissioners, is as follows:

"If the board of education in any district fail in any year to estimate and certify the 'levy of a contingent fund as required by this chapter, or if the amount so certified is deemed insufficient for school purposes, or if it fail to provide sufficient school privileges for all the youth of school age in the district, or to provide for the continuance of any school in the district for at least seven months in the year, or to provide for each school an equitable share of school advantages as required by this title, or to provide suitable school houses for all the schools under its control, or to elect a superintendent or teachers, the commissioners of the county to which such district belongs, upon being advised and satisfied thereof, shall do and perform any or .all of said duties and acts, in as full a manner as the board of education is by this title authorized to do and perform the same; and the members of a board who cause such failure shall be each severally liable, in a penalty not to exceed fifty nor less than twenty-five dollars, to be recovered in a civil action in the name of the state upon complaint of any elector of the district, which sum shall be collected by the prosecuting attorney of the county, and when collected shall be paid into the treasury of the county, for the benefit of the school or schools of the district."

Had, then, the county commissioners of Champaign county, authority to employ the defendants as teachers in these two sub-districts in view of these statutes? Had the township board failed to provide sufficient school privileges for all the youth of school age in their district, or to provide for each school an equitable share of school advantages, as required by the statute? Or to bring it a little nearer the controversy in these cases, had the township board failed in either of these respects in regard to sub-districts Nos. 2 and 12?

The duties imposed upon township boards of education are like those imposed upon many other public officers—either ministerial or judicial.

In *Place* v. *Taylor*, 22 Ohio State, 322, the Supreme Court defines the judicial duties of a public officer to be those, the manner of discharging which is left to his own judgment and concerning which he may use his own discretion, and his ministerial duties to be those concerning which he has no discretion, but which he is required to perform in a particular way. In

other words, the manner of discharging his judicial duties is left to his own judgment and discretion, but he has no discretion in the discharge of a ministerial duty.    With respect to such duties he must proceed in a specified manner.    To illustrate in this case: fixing the tax rate, certifying same to county auditor, establishing a sufficient number of elementary schools in the township, providing school houses for the convenience of the pupils, employing teachers, furnishing school appliances, fuel, etc., making arrangement for transporting pupils from a sub-district suspended to another school, and the like, are ministerial acts; but changing the boundary lines of a sub-district, abolishing sub-districts and suspending the schools therein, are judicial acts of the board.    The former duties, the statute requires of it and specifies the manner in which it shall perform such duties; the latter it may do or it may not do, as in its judgment and discretion it may deem best.

That such judicial discretion of a public officer can not be controlled by the courts, is well settled by abundant authority in Ohio, nor under the construction this court places upon the provisions of Section 3969, above quoted, can this discretion be controlled by the county commissioners.    The evidence in this case clearly shows that the board of education had suspended the schools in these two districts, and the action of the county commissioners in hiring teachers in these sub-districts, in effect reversed the action of the school board and re-instated the same. If the board of education, having suspended the schools in these sub-districts, had failed to furnish transportation to other schools as provided by law; that is, had failed to perform its ministerial duty, imposed upon it in this respect by the statute, then the commissioners would have had authority to provide for such transportation, but the board of education, having by its order suspended these schools and having, as the court thinks the testimony shows, made provision for the transportation of these pupils to other districts, the commissioners were not vested by the statute  with authority to review and change, or in any manner interfere with the order of the board of education in this respect.

A board of education of a township, under the statute, as it now stands, is not required to provide for one primary school in every sub-district. Prior to the amendment of Section 4007, April 25, 1904, the board *was* required to do so. The language of the statute then being "Each township board of education shall establish and maintain at least one elementary school in each sub-district under its control." The amendment above referred to provides that "Each township board of education shall establish and maintain at least one elementary school in each sub-district under its control *unless* transportation is furnished to the pupils thereof as provided by law."

Section 3922 of the act that enacted the foregoing and above amendment provides:

"The board of education of any township school district is authorized to suspend the schools in any or all sub-districts in township districts, but upon such suspension the board must provide for the conveyance of pupils residing in such sub-district to a public school in said township district," etc.

It is clear from these acts that the board of education of Wayne township had the right to suspend these schools and provide for transportation of the pupils to another public school in the township, and the evidence before the commissioners shows that this is what the board of education of Wayne township had done.

The question whether the board, in suspending these schools, acted wisely or in accordance with the will of the patrons of the schools suspended is not before the court, and the court is not called upon to deal with this question. The board may have acted arbitrarily; it may have used bad judgment in suspending these schools, and it may have acted against the will of the people of these districts, and the court is inclined to the belief that the board did act at least contrary to the will of these people, and against their protest, and that its action in this respect is open to just criticism, but this does not change the rights of the board under the statutes.

If public officials, elected by the people, in the discharge of their duties as such, fail to do the will of the people, it is the

right of the people, under our elective system of government, if they choose to do so, to elect as their successors those who will.

The court's construction of Section 3969 is, that when a board of education fails in any year to do any of the things enumerated therein, all of which in the opinion of the court come within the class of ministerial duties, as hereinbefore defined, the board of county commissioners, upon being advised and satisfied thereof, may do and perform any and all of said duties in as full a manner as the board is authorized to do. But, even as to these acts enumerated, the court thinks that a mere difference of opinion between the commissioners and the board of education as to the manner of doing them, does not give the former the right to act for and instead of the board. The penal clause of this statute provides that the members of the board who caused *such* failure shall be each severally liable in a penalty not to exceed fifty dollars nor less than twenty-five dollars. I think this throws some light on the true construction of the statute, and the intention of the Legislature in enacting it. The same failure, it seems, that would give the commissioners authority to act, would subject the members of the board to the penalty. The penal provision of the statute must be construed strictly, and it can hardly be said that the Legislature meant any other than the willful, voluntary failure on the part of the members of the board to do any of the things enumerated in the act. The statute was not intended to punish a member of the board of education for a mistaken, or lack of, judgment in the performance of any of his duties however unsatisfactory the result might be to the pupils or people of the township. The language of the statute is "The members of the board who cause *such* failure shall suffer the penalty"; that is, the failure that shall authorize the commissioners to act in the matter, but whether the court is right or not in this view of the penal provision of the statute, it is clear that before the commissioners can act in place of the board of education, the board must have failed to act in some of the particulars mentioned in the statute. The evidence before the commissioners and the evidence in sup-

port of the motion before the court, in its opinion, does not show any such failure. The only failure was the failure of the board to employ teachers in these sub-districts, Nos. 2 and 12, and this was in fact no failure in view of the action of the board formerly taken to suspend the schools in these sub-districts. It has been suggested by counsel for the defendants that the board had not provided for the transportation of that portion of the pupils of district No. 2, cut off by the changing of the boundary line of that sub-district. So far as this is concerned, the evidence shows that a committee was appointed by the board on September 14, three days before the beginning of the schools, to provide for the transportation of these pupils, and there is no evidence to show that the committee had failed to discharge this duty. Besides, if it had so failed, the commissioners, in the opinion of the court, would then have authority only to provide for such transportation and would not, by reason of such failure, be authorized to re-instate the sub-districts or hire a teacher for the same.

I have been able to find only one Ohio case wherein a court has construed Section 3969 of the statute. This case was heard by the Court of Common Pleas of Summit County and reported in 4th Ohio Decisions, 329. *State, ex rel, v. The Board of Education of Cuyahoga Falls.*

This was a suit in mandamus, and the writ was allowed to compel the board of education to issue an order for his salary, in favor of a superintendent of the village schools of Cuyahoga Falls, who had been employed by the county commissioners. The board had voted for several applicants, but failed of an election by a tie vote. The court in passing upon the right to a writ of mandamus says:

"Doubtless the board could have elected anybody else superintendent of the schools without let or hindrance from anyone but the board, and it is equally true that they could have determined not to elect a superintendent, or perhaps to abolish the office entirely and conduct their schools simply by the employment of teachers for each school."

This opinion is in accord with the conclusion of the court in

the case at bar, that the commissioners can act only in the event of the failure of the board to act.

I am of the opinion, therefore, that the board of county commissioners of Champaign County, under the evidence before it on the 17th day of September, was without authority to reinstate these sub-district schools and to employ teachers therefor, and that such employment being without authority in the commissioners, the defendants are without authority to hold possession of the school houses in said sub-districts, and to teach the schools therein.

As to the first ground of the motion, that the petition does not state facts sufficient to constitute a cause of action, the court is of the opinion it is not well founded. The petition not only avers that these defendants unlawfully took possession of the school house in said sub-districts, on the 18th day of September, 1906, and assumed to control the same, but that they have unlawfully assumed authority to teach school in said sub-districts, and have interfered with the plaintiff in its control and supervision of said sub-districts, and the pupils therein, and have interfered with the plaintiff in the supervision, management and control of the schools provided for said sub-districts by the plaintiff.

If the allegations of the petition are true, and the motion, being in the nature of a demurrer to the petition, admits them to be true, the court is of the opinion they state facts sufficient to constitute a cause of action and entitle plaintiff to the relief prayed for.

In the opinion of the court the plaintiff is without adequate legal remedy. A criminal proceeding against the defendants and their arrest could not restore plaintiff to its rights, nor could a proceeding in forcible detention, suggested by counsel for defendants, which might result in restoring plaintiff to the possession of the school house, alone restore it to its right to manage and control the schools of the sub-district. The proceedings before the commissioners were not adversary in their character. The plaintiff, the board of education, was not a party in a legal sense to such proceedings. It had no right to except to the finding and order of the commissioners, and upon such ex-

ceptions institute proceedings in error. Besides, if it had such right, it could not avail it in this matter. In this state it is well settled that the proceedings and final orders of trustees and county commissioners may be reviewed by petition in error, and reviewed only for error appearing upon the record. Many cases might be cited in support of this proposition. *Haff* v. *Fuller*, 45th O. S., 495; *Lewis et al* v. *Laylin et al*, 46th O. S., 663, being in point.

In *Haff* v. *Fuller* the court say—

"In this state the proceedings and final orders of trustees and county commissioners, establishing ditches and roads, and other boards exercising similar functions, may be reviewed by petition in error and reversed for error appearing on the record.

"The operation of this rule is not extended, however, to where the steps are regular so that the illegality does not appear on the face of the proceedings. In cases of that kind if it be shown contrary to what appears on the record that the board or tribunal proceeded without jurisdiction, injunction may be granted, for there is no adequate remedy at law."

In the case at bar the steps taken by the commissioners were regular as far as appears from their record, and the illegality complained of by the plaintiff in their proceedings does not appear on the face of the proceedings of the county commissioners, but is shown by the evidence to what appears on the record, and I am therefore of the opinion that injunction is the proper remedy.

The right to injunction in a case similar to the one at bar is upheld by the court in the case of *The Board of Education of Richland Township, Clinton County,* v. *O. V. McFadden*, reported in 8th O. D., p. 57.

As to the second ground of the motion, that the board of education did not authorize the bringing of this action, there is no record of the proceedings of the board that shows the board at any meeting directed this particular action to be brought, but as the action is brought by the board, in the name of the board, and the testimony discloses that the controversy involves the action of the board in suspending certain schools of the town-

ship, to-wit, Nos. 2 and 12, and the record of the proceedings of the board of education of September 14, at a meeting held subsequent to the suspension of the schools in these sub-districts, and subsequent to a notice served on the board that an application would be made to the county commissioners of the county to employ teachers to continue the schools in these sub-districts, show that the board retained the attorneys appearing for it in this case to represent the board in the legal matters that might thereafter be brought in relation to the suspending of the schools of the township, the court is of the opinion that if it be necessary for the board to have authorized the bringing of this action, and that such authority should appear as a matter of record in the minutes of their proceedings, such authority for the bringing of this suit appears from the action of the board, so taken on the 14th day of September.

The motion to dissolve the temporary restraining order, heretofore granted, is overruled.

*E. L. Body* and *Buroker & Zimmer*, for plaintiff.

*L. D. Johnson*, for defendants.